based us I prefer that the courtroom gotta get settled before we start arguments you know you're fine okay Mr. Pierre. May it please the court Fodlan Pierre on behalf of appellant Samuel Scott. Mr. Scott was arrested after he called the police for his own vehicle stolen. Here a car thief crashed Mr. Scott's vehicle fleeing northbound on foot. Eight minutes later officers responded to Mr. Scott located him approximately two miles away in the opposite direction. We have a case of mistaken identity right I mean an officer erroneously identifies your client as the suspect is that not right the officer made a a identification based off of a vague description not that he actually saw my client yep that's mistaken identity right I would I want to be careful with the words because based off of the record it was based off of a description if the court says that's a mistaken identity yes but it's not because he actually saw the suspect's face yeah he has to make a determination based on all the information available to him about whether that this might be the suspect right probable cause analysis requires that the totality of the circumstances all the objective evidence all the events that led up to the arrest be taken into account correct your honor but doesn't he unambiguously say the officer when he sees him in a group that he immediately recognized him as the man who had sped past him and then fled the car crash and that's what's at issue that's what he's just said but that it that's a fair statement of what he says is it not that's his post litigation account prior to litigation all of the evidence suggested that he did not see there's three key evidence that the district court failed to consider one is his contemporaneous report which basically says I saw a heavyset black man fleeing from the crash vehicle then there's his police body-worn camera anytime in we've looked in the court has the body-worn cameras he never says I saw that man in fact when he speaks to mr. Scott he basically says you fit the second is his depth is I mean third his deposition testimony there was a work ID found in the vehicle right and the officer and looking at that ID thought that it matched the person who had who had bailed out of the vehicle right no your honor it's a little different than that here's here's the events that led up to him getting the work ID my client called at 540 regarding his reported vehicle stolen 605 he engages in a in a car chase with the stolen vehicle 622 there's a dispatch at the same time the car crash is happening which basically says the vehicle that is crashed belongs to my client gives the information provides the number in after that he conducts an inventory he checks the vehicle he finds out who the owner is he has the he work ID he gets the work ID the work ID and if the court looks to de 50 Guzman's body-worn camera at T 22 45 25 Z it it's in his hand and it shows exactly my client's face as well as his his name so but if we take the reasonable inference at this stage to in light of mr. Scott he has a photograph he has the photograph and the photograph at least to the officer resembles the person who has fled the vehicle no that's not that's not what happened he has the photo the officer was a sort of two minds and what he said about whether he saw the individual fleeing the vehicle or whether he didn't see the individual fleeing the vehicle your argument is that inferences drawn in your favorite summary judgment indicate that he did not get a good view of the person who was fleeing the car based off the evidence in the record that would be correct your honor my argument is that he's making up this story after the fact when all of the evidence shows that he didn't see the person he saw this vague description of an individual that was going to help me win with what he what what he actually says under oath when he's subject to confrontation and cross-examination I thought and tell me if I've misunderstood this under oath in the deposition he says and don't misunderstand me this may be subject to powerful refutation later but we're here on whether there was probable cause but do I have it right that he said the Jeep was driving toward him when he saw it speeding it was driving southbound as he was parked in the median facing northbound he testified he could see the driver's face the whole time as the Jeep drove toward him he had quote these were his words full vision of the driver with nothing obstructing his view and when he arrived at the scene of the alleged car theft he testified that he recognized Scott as the driver quote immediately because quote he had visually seen him committing a crime that is to say speeding away and fleeing the scene of a crash he does say that under oath right he does say that but there's conflicting evidence in the record at DE 69 point I mean 69-3 page 30 91 lines 11 through 13 I asked mr. Guzman so your first observation of Samuel Scott was from his work ID that is direct and he says yes that is in direct conflict of his bear with me for a moment let's accept for the purposes of my question that you have unambiguous testimony saying one thing and lots of other stuff that might undermine the credibility or believability of the deponent the question we have though is whether there was probable cause at the time to affect the arrest and the probable cause determination generally is characterized as a preliminary determination made initially in an ex party proceeding we've said that there may be evidence that undermines it it may be subject to confrontation and cross-examination but quote finely tuned standards such as proof beyond a reasonable doubt or even by a preponderance of the evidence have no place in the probable cause determination that's Supreme Court of the United States tells us that and so the question we have to ask is whether looking at the totality of the evidence viewed from the perspective of a reasonable officer whether there was a probability or a substantial chance of criminal activity that's the standard if I if I have it right that we have to measure this against we would agree with you it is not as high as a a reasonable doubt standard that is solidified in the law what you did say and I do want to harp on is that the probable cause standard requires reasonableness and in this case based off of the totality of the circumstances it is not reasonable to assume that my client who's a heavyset black man called the police 40 minutes before the incident actually occurred gets in contact and in the meantime by calling another officer in in eight minutes runs two miles your honor we take that's your strongest argument your argument is that in a you know and I take what my colleagues have said and I agree with them in a normal misidentification case where there's some basis for the identification the officer gets qualified immunity or there be probable cause or arguable probable cause your argument is basically that this was a physical impossibility because the car crashes at 622 at 630 a different officer meets your client two miles away and that it is in physically impossible for a person to have gotten two miles in eight minutes unless he or she were going to be very close to breaking the world record for the mile yes your honor right and I mean they were on foot right assuming they were on foot and number two that if you take officer Guzman at his word that he got a view of the driver his description does not mention that person having a beard and your client has a beard this one I think is physically impossible to grow a beard in eight minutes I would agree with you judge Jordan right so this is not a I don't know how the case comes out but this is not a just a normal run of the mill misidentification case because there are at least a couple of things that indicate that it might have been physically impossible for your client to have been the person who crashed the car and then been somewhere else two miles away eight minutes later talking to a second officer in the dispatch under the fellow officer rule imputes the constructive knowledge to all the officers so all of the officers knew in Mr. Guzman had actual knowledge of this because he received the dispatch where my client was at the time of the crash he knew his phone number he knew that the in his arrest affidavit he says this was a delayed call meaning that this the dispatch received at approximately 622 on the call was made at 540 so he had that information within his knowledge so to say that this individual basically did world record time it was bait it was essentially physically impossible for my client to be the individual that stole his own vehicle after reporting it your honor I see that there's five seconds left yeah in well you've saved some time for rebuttal so why don't we hear from opposing counsel thank you thank you mr. captavela good morning and may please the court Brian captavela on behalf of a Pele's my city of Miami bloom carry Alan Guzman I'm joined by miss Lourdes Espino Weidler counsel for a Pele Hernandez we are seeking this court to affirm the district courts grant a summary judgment and the court should do so because the district court correctly found actual probable cause at the moment officer Guzman identifies Scott at the second location alternatively this court could affirm on the basis that there was arguable probable cause at that time but as to the federal claims that the officers were properly afforded state law immunity and that there is no evidence of malice or bad faith mr. court's order does not lay out conflicting testimony and that may not be a fatal error because as judge Marcus said we're determining probable cause which is not a heavy standard but the district court's order seems to take the defendants version of events as a given doesn't draw any inferences against them doesn't mention the possibility that it's physically impossible for someone on foot to have gone two miles in eight minutes and to have been the person who crashed a car and the person who was met by a different officer to discuss the theft of the car doesn't mention the lack of a beard on the suspect by officer Guzman and the fact that mr. Scott had a beard I mean none of those things are in the district courts recitation of the summary judgment record now like I said that may not lead to reversible error but it doesn't seem like the district court viewed the in the light most favorable to mr. Scott can you tell me your response well to begin your honor we disagree I do agree with you that the beard is not mentioned but I don't think that that creates a reversible error the district isn't it isn't it isn't it an important issue to consider given that is this is a misidentification case and the suspect did not have if officer Guzman is taken at his ward that he got a good view of him right and he doesn't say that he had a beard and now mr. Scott has a beard isn't that important it may not be determinative but isn't it important well as there are cases that we cited in our brief that explained that I don't these these descriptions don't have to be perfect right policing is not a perfect way I'm saying that's why I prefaced the question with it may not lead to reversal it may not be a reversible error but the district courts recitation of the facts doesn't seem to take anything in the light most favorable to mr. Scott well may I provide you an example of how it did consider things in his favor so for example the record the appellees were consistent and saying that the record supports an arrest time or rather a crash at 605 and that the call was made at 622 in fact today mr. mr. Pierre provides a different telling of the events but the district court took his version of events is true in that regard saying that the crash transpired at 622 so crash occur at 605 or 622 622 so I'm sorry are you telling us it's 605 or 622 I may not I may not have heard you clearly the it's our position that the crash transpired at 605 the record supports that and the documents that mr. but but your opponent but however but to the point of 622 which was accepted by the district court in his favor which which provides a much narrower window at a wrong wrong address but still reasonable officer the district court flipped the Avenue and streets which makes a huge difference in Miami which is set on a quadrant well record said that crash took place at 515 Northwest 72nd Avenue that's by the Palmetto well that's it is about seven to eight miles away that's what I'm telling you that the district court's order seems skimpy to me with regards to the recitation of the summary judgment record well if as you may recall from Carrie L's description in his deposition the first location in the second location took him approximately four to five minutes to arrive so if mr. Scott had assistance with a vehicle to get from the first location to the second location that would certainly make sense as to how we arise at that location and how he obtains this black shirt that he throws on top of the white tank top so to that end a reasonable officer doesn't need overwhelmingly convincing evidence this is a reasonable officer standard and arguably a reasonable officer could also conclude that mr. Scott got to the second location with a little bit of assistance and and as a reminder officer bloom in his testimony explains that when he arrived at 630 mr. Scott was nowhere to be found he so he circled and drove around the neighborhood and again mr. Scott was nowhere to be found eventually mr. Scott appears as we all know a little bit winded and he provided meandering and and varying how at what time does he appear it appears he as far as we can tell it looks like it's approximately 635 so that gives him a little bit more leeway to get there it's not entirely clear but it's certainly not 631 officer bloom arrives at the scene because he has to drive around the neighborhood to find mr. Scott so your answer is it's possible if he drove it's possible we would agree with judge Jordan if he was on foot he couldn't have done it if if the crash he was really a marathon sprinter and there's no evidence of that I I think if if the crash happened at 622 which is not our position we believe the crash happened at 605 and I can explain that to you if you like but you have a basis for it but it's a summary judgment standard so you've got to look at facts and inferences in the light most favorable to the non-moving party well I have to I would like to explain to you why I we don't believe that's a genuine a material dispute to that end and why the record supports a 605 crash time your honor but to your question your honor and it was to the question could 622 be possible with with the assistance of but certainly not or a scooter I mean driving back to the hotel yesterday passed by the you know these stand-up scooters that are ubiquitous now in urban in major cities certainly exist in Miami last time I checked that's correct your honor but but to your point judge your honor the the exhibit that mr. Scott relies upon to say a 622 crash time transpired is this crash report that was prepared by officer Brandon Williams during his deposition officer Brandon Williams says that he wasn't there when the crash transpired he relies on a CAD report the CAD report the only CAD report in this record mind you is a CAD report for a stolen vehicle at 622 so there is no CAD report for a believe it's 69-10 so your answer boils down to one the crash may have occurred at 605 and he wasn't found until 635 alternatively if it's 622 there was there were 13 minutes in which case he could easily have gone on a scooter as judge prior mentioned or driven and so that it's not so implausible as to the eyewitness identification so worthless of belief that the court could not rely on it for a probable cause determination 100% your honor yes and that essentially goes to the what about the what about the problem with the beard what are we to make of that I agree a beard cannot be grown in particularly when he testifies with great clarity I was able to eyeball this man in the car he was coming my way and I saw him for an extended period of time I saw him full face well I think the body-worn camera footage also shows that the beard was quite low so to that end I think that these these identification cases don't require perfection but mr. Scott indisputably is tethered to that car because there's other objective indicia of guilt so for example it's undisputed that it's his vehicle it's undisputed his ideas there but setting that aside more importantly he's not at the scene where he says he's supposed to be and on top of that he get then gives different alibis as to where he is he even goes so far as to say his car was stolen in the city of Miami Gardens then he takes a bus and then he decides he's going to report his stolen vehicle in the city of Miami even though it was stolen in the city of Miami Gardens but and then on top of that he said I thought he explained that he was at a relative's house and that's where the vehicle was stolen the record shows that he provided various stories but but one of the stories that he provided during his deposition your honor is that I want to know what the what the officers knew at the time what the officer time they at the time his version of events was if not mistaken that he went he was at a relative's house with his children and he left his car there when he went inside and when he came back outside the car was stolen and that's what the officers were told with the stolen vehicle report that he phoned in right that is not entirely accurate he provides various stories to different officers but I want to add that his reaction to seeing his stolen car was not to go inside of the home or to to call police immediately a reasonable officer could not believe him because his his explanation didn't make much sense he said that he decided to walk around the neighborhood to see if somebody moved his car as a prank I see my time is running up unless there's any further questions but but essentially yeah but to your to your question I think that a reasonable officer does not have to believe protestations of innocence or alibis your honor judge Jordan and chief judge I think was maybe as chief judge prior in Williams versus City of Montgomery talk about Hill versus California the talk about these mistaken identity cases and that these cases don't require perfection another example is this courts holding in Rodriguez which found that a difference of five inches in height was not enough to reverse for probable cause and we know that we have a four inch height difference here but okay thank you and in all other respects I rely on my briefs and I'll hand that over to miss Espino Weidler thank you yeah miss Weidler good morning and may it please the court Lord is Weidler on behalf of retired officer appellee Miguel Hernandez the majority of the argument this morning has relied on whether or not there's an existence of probable cause during my portion of the argument I'm going to address that there are other outs for these appellees officers and for this court to affirm summary judgment on the basis of either arguable probable cause and as it relates to my client mr. Hernandez who is the only appellee where they're seeking the search claim on him all he needs is either arguable reasonable suspicion or reasonable suspicion which are all lesser standards than the lenient standard of probable cause as opposed to a civil case or a criminal case I'd like to arguable probable cause would you agree with me means that the burden on the plaintiff is to establish that the absence of probable cause was clearly established as a matter of federal law right but they could be reasonably mistaken as to the identification and as it relates to the in other words you could looking at clearly established federal law reasonably miss her and conclude that there was probable cause and in you would be entitled then to the benefit of arguable probable cause yes the shield of qualified immunity would be present for these assisting officers but the issue of probable cause is specific to officer Guzman these officers reasonably relied on his positive ID at the second location I want to point the court much communication was there between officer Guzman and officer Hernandez about what had transpired so there was a little bit of a gap in terms of what one told the other or what the other one learned and you're right just Jordan the axon video camera and the testimony specifically shows that before Hernandez was about to conduct a limited pat-down search on mr. Scott there was no direct communication between him and Guzman however they all pulled up to the scene together we here on the camera that's the bailout bloom repeats it that's a bailout all of this in front of officer Hernandez and carry out then for 30 seconds that elapse you see these three or the first pat down or between the first and second search before the first pat down there's 30 seconds when Hernandez and bloom actually give each other a hug they hadn't seen each other in a while and then you see the you see my client gesture over to the plaintiff and they're talking about it 30 seconds you don't hear it it's inaudible in the camera but these gentlemen testified four years after the fact I'm almost sure we talked about the bailout and it's my client's position and there's no evidence in the record to support any type of fabrication that he believed reasonably and even if it was mistaken that the suspect on site on that signal 22 which was a stolen vehicle was the same person that officer Guzman saw I'd like to point the court to one of your honors opinions Vickers versus Georgia this is a case regarding the fellow officer rule and and it's true what you mentioned judge Jordan that there was no direct communication but the fellow officer rule is also considered collective knowledge collective rule knowledge of one is imputed to the other that is right and let me get on the on the facts of that case because it's almost identical even the appellant's claim of misidentification or wasn't me I didn't commit the offense it's impossible is the exact same thing that was argued in Vickers and there there's two officers officer Jenkins observes an individual trying to break into a car it's late at night in a dark parking lot suspect gives on foot he starts chasing him he loses him officer Knapp is told a description what's the description it's a black man in a hoodie a short distance away the short distance isn't isn't explained in the opinion they see him he apprehends him guess who comes over it's officer Jenkins and he says that's the guy in that Vickers opinion this court found that there was probable cause for the arrest and you I understand that argument so I'm sorry if I'm interrupting but you're you're running on your time if you win only on arguable probable cause and not actual probable cause what does that do to the remaining claims do they have to be as resolved on the merits no the remain argue probable cause knocks out the state claims to it would it would not right that's what I'm suggesting their statutory immunity under seven six eight no no I'm not I'm not I'm not they just I'm not I'm not saying I'm not saying you'd lose on them I'm just saying if you only get arguable probable cause you have to address those other claims on the merits right you can't just use probable cause as the knockout for all of them like the district court did right probably if you have probable cause that's the end of everything for everything but if you only have arguable probable cause then you have to reach the other claims on their merits yes right okay yes aside from Vickers we we rely on Williams versus Miami-Dade police even if it is established that Guzman provided false information although not so not supported by this record the assisting officers would still be entitled to qualified immunity and probable cause would still be in existence we ask that the court affirm thank you thank you mr. Pierre save three minutes thank you your honor first your honor I'd like to address the case of what it is is a case of mistaken identity our version of the facts in which this court must accept that the summary judgment stage is that this was a fabrication that he never in fact actually saw my client he saw a heavyset black male running northbound and my client was located southbound in addition there is key evidence in the record that shows that when he gets the lanyard and if he saw if he actually saw my client as this as a court intimated when he was driving he doesn't radio the police officer saying that this is a person of interest he as he continues with his investigation regarding the timing your honor the opposing counsel suggests that the timeline that we have that the crash didn't occur at 622 it occurred at 605 your honor here's where we get our at our support in the record at 540 officer Guzman says in his arrest affidavit that's when the call occurred he says at 605 this is when the incident occurred not when the crash occurred regarding the 622 time we get from Brandon Williams testimony where he basically said I got all my information from officer Guzman so he placed the 622 in the record regarding the dispatch the CAD report lays out when the call was dispatched to the officers so and then regarding the 630 time officer Bloom testifies in his deposition exactly when he arrived at the scene he says 630 so our timeline is supported by the record which makes it unreasonable to believe that my client could have been the individual who who did all of these things in eight minutes time regarding let me ask you what just one very quick question if I can I take it you agree that if all they can establish is arguable probable cause not probable cause there isn't a sufficient basis to kick the claim against the city exactly your honor I would agree with that they would still have to stand trial on the issue of the false arrest as well as the militias process couldn't use 768.289 a right they could not because but that's what the district court went off on against the city right exactly your honor the 768 was an unraised argument so even if this court found that there was no arguable probable cause the city and the officers would still have to stand for trial on the state claims for the reason even if there was arguable probable cause that that would still have to you would have to establish that there's evidence of willfulness or bad faith or intent right yes your honor but what where's the evidence of that that we but that's that's the whole issue is because the district court didn't rule on the sovereign immunity issue as to the officers it ruled on the sovereign meaning the issue as to the city which was not raised so that is at that's fair game so they would have to stay in trial one or the other if if there's only arguable probable cause then the state claims have to be resolved on their merits if there's no willfulness or bad faith on the part of the officers then you've got a claim against the city if there is willful of bad faith conduct on behalf of the officers you get to go but you can't go against the city yeah it's mutually exclusive yeah exactly you're we and we got you for the reason stated and okay go ahead oh for the reason stated in the record we request that this court reverse the district courts ruling thank you mr. Pierre we're gonna move to the next case